**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| Megan Uzzolino, | ) | Case No.:    9:22-cv-01738-RMG-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Andrew Corriveau, Corriveau Insurance | ) | **COMPLAINT** |
| Agency, Inc., State Farm Mutual | ) | *(Jury Trial Demanded)* |
| Automobile Insurance Company, State | ) | |
| Farm General Insurance Company, State | ) | |
| Farm Fire and Casualty Company and State | ) | |
| Farm Life Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff alleges:

1.    Plaintiff ("Uzzolino") is a citizen and resident of Beaufort County, South Carolina.

2.    Defendant Andrew Corriveau is a citizen and resident of Beaufort County, South Carolina.

3.    Defendant Corriveau Insurance Agency, Inc. ("Corriveau Insurance Agency") is a corporation organized and existing under the laws of the state of South Carolina.  Corriveau Insurance Agency maintains its main office and principal place of business, for the purpose of selling insurance, in Beaufort County, South Carolina.

4.    Defendant State Farm Mutual Automobile Insurance Company is a duly licensed insurance company, authorized and qualified to do business in the state of South Carolina.

5.    Defendant State Farm General Insurance Company is a duly licensed insurance company, authorized and qualified to do business in the state of South Carolina.  State Farm

General Insurance Company is the wholly owned subsidiary of Defendant State Farm Mutual Automobile Insurance Company.

6. Defendant State Farm Fire and Casualty Company is a duly licensed insurance company, authorized and qualified to do business in the state of South Carolina. Defendant State Farm Fire and Casualty Company is the wholly owned subsidiary of Defendant State Farm Mutual Automobile Insurance Company.

7. Defendant State Farm Life Insurance Company is a duly licensed insurance company, authorized and qualified to do business in the state of South Carolina. Defendant State Farm Life Insurance Company is the wholly owned subsidiary of Defendant State Farm Mutual Automobile Insurance Company.

8. Defendants State Farm Mutual Automobile Insurance Company, State Farm General Insurance Company, State Farm Fire and Casualty Company and State Farm Life Insurance Company shall hereinafter be referred to, collectively as "State Farm."

9. At all times material hereto, Uzzolino was an employee of Defendants. Uzzolino began working for Defendants in December of 2018. Uzzolino resigned from her position on January 13, 2021.

10. During the course and scope of her employment, Uzzolino received training from and had to complete continuing educational and/or training videos created, published and/or controlled by State Farm. Uzzolino was required to complete employment and/or compliance forms which were created, published and/or controlled by State Farm. Uzzolino was required to abide by State Farm's policies and procedures. Uzzolino's employment was dependent on her selling, issuing, writing and/or servicing State Farm's insurance policies. During the course and

2

scope of her employment, Uzzolino attended State Farm seminars, wherein she was taught State Farm policies and procedures.

11.     State Farm creates, publishes and/or controls advertisement materials, store displays, logos, etc.

12.     State Farm requires its employees, including Corriveau and Uzzolino to complete training on its website and/or portal.  Said training is created, published and/or controlled by State Farm.

13.     Said training includes, but is not limited to, State Farm's Code of Conduct compliance.

14.     Defendants failed to follow and/or enforce its own Code of Conduct.  State Farm's President and CEO, Michael Tipsord, provides "[w]e hold ourselves to the highest standards of ethics and integrity…State Farm will not tolerate retaliation against anyone who raises issues of potential concern, and we expect all leaders to model this commitment."  State Farm's Code of Conduct also provides:

> All of our employees, especially leaders, have the responsibility to demonstrate our high standards of ethics and compliance, including:
> - Lead by example and be a role model for ethical and logical behavior.
> - Be a resource for others.
> - Create an environment where honesty and integrity are expected and valued, and where everyone feels comfortable asking questions and reporting potential violations of the law, the Code and our policies.
> …
> State Farm is committed to a work environment where everyone is treated with respect and dignity…[w]e will not tolerate sexual or any other form of harassment that interferes with work performance or creates a hostile or offensive work environment…[w]e expect all workplace relationships to be of a professional nature and free of harassment, unlawful bias and/or offensive conduct. Inappropriate comments and objectively offensive behavior will not be tolerated in any business interactions, regardless of the setting or parties involved.
> …
> We all have the responsibility to work in a way that helps ensure the safety and security of ***our coworkers***, business partners, vendors and visitors.

Exhibit A, State Farm's Code of Conduct (emphasis added).

15.    Corriveau and Uzzolino were required to complete State Farm's Code of Conduct Completion Form, annually, and the annual Code of Conduct Training Course, both of which are developed, published and controlled by State Farm.

16.    Despite the Code of Conduct, Defendants created the ideal environment for Corriveau to prey on Uzzolino and other female employees of Defendants.

17.    Upon information and belief, Corriveau and/or Corriveau Insurance Agency primarily hires young women.  According to multiple prior employees, Corriveau and/or Corriveau Insurance Agency would inquire, during the young women's' interviews, whether they were single, had children, going through personal issues, e.g., divorce, financial issues, etc.  After these young women were hired, Corriveau often manipulated them and/or questioned them about their personal life only to later use that knowledge to his advantage.

18.    During the course and scope of Uzzolino's employment, she was subject to unwanted, unwelcome, hostile and perverted sexual conduct on the part of Corriveau, including but not limited to:

    a.  Making perverted, lewd, inappropriate and unsolicited sexual comments, innuendos and advances toward Uzzolino, and other female employees;

    b.  Making perverted, lewd, inappropriate and unsolicited sexual threats to Uzzolino, including telling her he wanted to spank her to punish her;

    c.  Strongly encouraging employees, including Uzzolino, to wear Halloween costumes, which were owned and controlled by Corriveau, kept in a closet in Corriveau's office and/or building, which were racy and inappropriate for an office setting;

    d.  Sit on Uzzolino's desk, positioning himself in a sexually suggestive manner, and making it impossible for Uzzolino to leave her desk;

      e.   Making perverted lewd, inappropriate and unsolicited sexual comments about Uzzolino's attire and/or appearance;

      f.   Making employees, including Uzzolino, do shots of alcohol in his office, all the while making sexual jokes; and

      g.   Giving employees, including Uzzolino, a clothing allowance to purchase dresses and other attire he found appealing. This was often done after Corriveau commented on employees' appearances and expressed his preference for dresses.

19.    Corriveau's conduct was not occasional, rather it was constant, ongoing and pervasive. It created a work environment that became increasingly hostile and difficult, forcing Uzzolino to leave her employment with Defendants.

20.    Shortly after Uzzolino put in her two-weeks' notice, Corriveau demanded an explanation. When Uzzolino replied that he'd been sexually harassing her, Corriveau became irate, shouted vulgarities at Uzzolino, and placed his hands on Uzzolino. Corriveau did not allow her to complete her two weeks with Defendants.

21.    Uzzolino made State Farm aware of Corriveau's conduct via a telephone conversation with State Farm's HR department. Further, Uzzolino completed an online complaint form via State Farm's portal (Ethics Point). After receiving the form, State Farm informed Uzzolino that her concerns were between her and Corriveau, leaving her no path for recourse.

22.    Uzzolino also made Corriveau's wife, Nancy Corriveau, who acted as Corriveau Insurance Agency's Office Manager and/or HR person, aware of Corriveau's conduct.

23.    Defendants failed to properly supervise or take adequate remedial action in response to Uzzolino's complaints.

24.    Uzzolino is not the only employee[1] to inform State Farm and/or Corriveau Insurance Agency of Corriveau's conduct.

    a.    <u>Employee A:</u>

Employee A worked for Defendants for approximately five (5) years. During this time, Corriveau sexually harassed and/or assaulted her. For example, Corriveau told Employee A, in front of other employees of Defendants, that she "looked ****able in her Halloween costume." The next day, Corriveau gave Employee A a car allowance and a raise. Corriveau went as far as offering Employee A money for a down payment on a house she was purchasing. Corriveau also openly ogled Employee A, often making sexualized jokes at her expense.

Employee A sought out the Regional Supervisor[2] for State Farm to voice her concerns. Employee A informed this State Farm representative, employee and/or agent that Corriveau was sexually harassing her and others, which was the reason Employee A was leaving Defendants' employment. The State Farm representative, employee and/or agent apologized to Employee A and confirmed her concerns, stating she also felt that way about Corriveau.

    b.    <u>Employee B:</u>

Employee B worked for Defendants for several years. During which time, Corriveau sexually harassed and/or assaulted her. For example, during Employee B's time with Defendants, she was attempting to get a real estate license. Corriveau approached Employee B, asking if she needed help with money. When she answered in the affirmative, Corriveau informed her that "there will be a time when I ask you for a favor, you'll pay up then." The next day, Corriveau offered to help Employee B study for the real estate exam – Corriveau said "let's study for your real estate license, we'll go a few rounds, then we'll study some more…then go a few more rounds." Employee B refused his help and his sexual advance. Afterwards, Corriveau treated Employee B so badly she quit. Corriveau, individually and as the owner of Corriveau Insurance Agency and/or employee of State Farm, was aware Corriveau's inappropriate conduct and the hostile, offensive environment.

    c.    <u>Employee C:</u>

Employee C worked for Defendants for approximately four (4) years. During which time, Corriveau sexually harassed and/or assaulted her. For example, when Employee C's husband was deployed, Corriveau made a sexual advance towards

---

[1] Employees' names will be disclosed in written discovery.

[2] The Regional Supervisor for State Farm served as a supervisor over Corriveau and/or Corriveau Insurance Agency. The position of Regional Supervisor for State Farm qualifies as a "high managerial agent" of State Farm.

her, stating his wife would be out of town the upcoming weekend, insinuating he would like to perform a sexual act with Employee C. Employee C emailed Corriveau, informing him that his behavior was inappropriate, and warning him to be cognizant of who he spoke to that way to. Corriveau refused to respond to Employee C's email, instead he scolded Employee C, verbally, for feeling the need to document their interaction. Shortly thereafter, another employee of Defendants, at Corriveau's instruction, requested Employee C sign a form. Said form was created by Corriveau and was essentially a waiver for sexual harassment in the workplace. Employee C was the only employee asked to sign said waiver; she refused. Corriveau, individually and as the owner of Corriveau Insurance Agency and/or employee of State Farm, was aware Corriveau's inappropriate conduct and the hostile, offensive environment.

25.     Upon information and belief, Corriveau would use the security cameras installed in the building to watch and/or stalk employees of Defendants.

26.     Upon information and belief, Corriveau would monitor Defendants' employees Skype Instant Messages amongst themselves.

27.     Despite having actual knowledge of the hostile environment created by Corriveau and the negative impacts to those subjected to Corriveau, State Farm and Corriveau Insurance Agency have been unresponsive and turned its head, abrogating their duty to provide a safe workplace – thus creating a policy and/or custom that tolerates Corriveau's behavior and ignores his victims.

28.     State Farm and Corriveau Insurance Agency's failure to provide a safe, non-hostile workplace has caused Uzzolino to work in fear for her personal safety and in constant state of fear and/or anxiety, resulting in damage to Uzzolino.

29.     As a result of Corriveau's longstanding pattern of abusive acts, Uzzolino has suffered injury to her person, fear, distress and anxiety as a result of Corriveau's conduct as set forth herein.

## FOR A FIRST CAUSE OF ACTION – STATE FARM
(Title VII)

30.     Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

31.     State Farm, though its agents and/or employees, engaged in a pattern and/or practice of unlawful discrimination by subjecting Uzzolino, and other female employees of Defendants) to an unwelcome, hostile work environment in violation of Title VII.

32.     The work environment as described herein created an intimidating, oppressive, hostile and offensive work environment, which interfered with Uzzolino's emotional well-being.

33.     State Farm, at all times relevant hereto, had actual and constructive knowledge of the conduct described herein and was well aware that the hostile work environment was severe and pervasive.

34.     State Farm, at all times relevant hereto, had an obligation to maintain a work environment that was not charged with discrimination and hostile to Uzzolino, and other female employees of Defendants.

35.     State Farm failed to adequately supervise, control, discipline and/or otherwise penalize the conduct and/or actions of Corriveau.

36.     State Farm failed to take all reasonable steps to prevent the discrimination and hostile environment from occurring.

37.     State Farm violated federal law by permitting a work environment to exist that was hostile and offensive to Uzzolino, and other female employees of Defendants.

38.     Uzzolino has filed charges against State Farm and received a Notice of Right to Sue.  Therefore, Uzzolino has exhausted her administrative remedies.

39.     As a direct and proximate result of State Farm's violations of Title VII, Uzzolino has suffered and continues to suffer loss of enjoyment of life, mental anguish, emotional distress and other nonpecuniary losses as may be proven at trial.

40.     As a further direct and proximate result of State Farm's violation of Title VII, Uzzolino has been compelled to retain the services of counsel and has thereby incurred and will continue to incur attorneys' fees and costs.  Uzzolino request that attorneys' fees and costs be awarded pursuant to Title VII.

41.     State Farm is informed and believes that the outrageous conduct of Defendants, which subjected Uzzolino to a severe and pervasive hostile work environment, as described herein, was done with a conscious disregard for her rights and/or with malice.  State Farm condoned, ratified and/or approved of the unlawful conduct of Corriveau so as to support an award of actual and punitive damages.

<u>FOR A SECOND CAUSE OF ACTION – STATE FARM</u>
(Retaliation in Violation of Title VII)

42.     Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

43.     Uzzolino has a positive record of employment with Defendants.

44.     Upon Uzzolino's resignation, Corriveau demanded to know the reason behind her resignation.   As stated above, Uzzolino informed him, in the presence of his wife, Nancy Corriveau, that she was leaving because Corriveau was inappropriate and sexually harassing her.

45.     Corriveau, employee, agent and/or representative of State Farm, became irate and told Uzzolino to "get the **** out," refusing to allow Uzzolino to complete her employment with Defendants.

46.     Such actions by Defendants to retaliate against Uzzolino amounts to unlawful retaliation in violation of Title VII.

47.     As a direct and proximate result of State Farm's actions, Uzzolino was terminated from employment, has suffered the loss of wages, a loss of earning capacity, loss of benefits, as well as intangible damages including emotional distress.  Uzzolino is entitled to an award of actual damages, attorneys' fees and costs, prejudgment interest and any other legal or equitable remedies available under the law.

FOR A THIRD CAUSE OF ACTION – STATE FARM
AND CORRIVEAU INSURANCE AGENCY
(Negligence/Gross Negligence)

48.     Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

49.     Uzzolino is one of several of Corriveau's victims.  Corriveau has sexually harassed and/or assaulted multiple female employees of Defendants.  As a result, current and former employees work and/or worked in an offensive, hostile work environment.

50.     Corriveau's behavior was reported multiple times to State Farm.

51.     Defendants have a duty to provide a safe working environment for its employees.

52.     Defendants have enabled Corriveau in continuing to allow him to sexually harass and/or assault employees.  State Farm's nonchalant attitude and/or lack of action has enabled him to continue this inappropriate behavior.

53.     As a result, Uzzolino sustained injuries and damages, including but not limited to, fear, embarrassment, anxiety and distress.

54.     Uzzolino's injuries and damages were due to and proximately caused by the negligence, grossly negligent action and inaction of Defendants in the following particulars:

STATE FARM

    a.  In maintaining and managing an unsafe, hostile environment in violation of State Farm policies and/or Code of Conduct;

    b.  In failing to protect Uzzolino, and other female employees of Defendants, when it knew that Corriveau's behavior and/or conduct posed a substantial and unreasonable risk of harm to Uzzolino, and other female employees of Defendants;

    c.  In failing to adequately supervise, control, discipline and/or otherwise penalize the conduct and/or actions of Corriveau.

    d.  In any other particulars as the evidence may show.

CORRIVEAU INSURANCE AGENCY

    a.  In failing to properly maintain its premises such that employees and others working thereon were assured of a safe, non-hostile work environment;

    b.  In failing to exercise reasonable care in the performance of its security measures, methods and procedures;

    c.  In maintaining and managing an unsafe, hostile environment in violation of State Farm policies and/or Code of Conduct;

    d.  In failing to protect Uzzolino, and other female employees of Defendants, when it knew that Corriveau's behavior and/or conduct posed a substantial and unreasonable risk of harm to Uzzolino, and other female employees of Defendants;

    e.  In any other particulars as the evidence may show.

55.  By reason of and in consequence of these negligent, grossly negligent actions and inactions of Defendants, Uzzolino suffered the injuries and damages complained of herein.

## FOR A FOURTH CAUSE OF ACTION – STATE FARM
## AND CORRIVEAU INSURANCE AGENCY
(Negligence/Gross Negligence – Negligent Hiring, Retention and Supervision)

56.  Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

57.     State Farm and Corriveau Insurance Agency had a duty to provide reasonable supervision of its employees and agent, Corriveau, when he interacted with Defendants' employees, including Uzzolino.

58.     It was reasonably foreseeable that State Farm and Corriveau Insurance Agency employees and agents, such as Corriveau, would sexually harass and/or assault Defendants' employees unless properly supervised.  Moreover, State Farm and/or Corriveau Insurance Agency knew or should have known of Corriveau's propensity to be inappropriate with female employees as most employees hired by Defendants were young, attractive females, oftentimes experiencing personal and/or financial issues, e.g. divorce, at the time they were hired.

59.     A reasonable investigation into the office of Corriveau, State Farm and/or Corriveau Insurance Agency would have indicated that Defendants' employees were being subjected to a hostile, offensive work environment.

60.     In choosing to operate a business, State Farm undertook the duty to exercise reasonable care in hiring, retaining, and supervising its employees.

61.     State Farm and/or Corriveau Insurance Agency, by and through its respective agents, servants and employees, knew or should have known of Corriveau's dangerous and inappropriate propensities and/or that Corriveau was an unfit agent.

62.     Despite such knowledge, State Farm and/or Corriveau Insurance Agency breached its duty to provide reasonable supervision of Corriveau and enabled Corriveau, who was in a position of trust and authority for State Farm and/or Corriveau Insurance Agency to commit wrongful acts against Uzzolino, and other female employees of Defendants.

63.     State Farm and/or Corriveau Insurance Agency acted negligently, grossly negligently, recklessly, maliciously, willfully and wantonly, and breached this duty with respect to Uzzolino by:

    a.  Retaining Corriveau;

    b.  Creating an environment in which Corriveau was permitted to prey on the vulnerabilities of Defendants' employees;

    c.  Any other particulars as the evidence may show.

64.     As a direct and proximate result of State Farm and/or Corriveau Insurance Agency's breach of duties, Corriveau repeatedly sexually harassed and/or assaulted Uzzolino, and other female employees of Defendants.

<u>FOR A FIFTH CAUSE OF ACTION – STATE FARM
AND CORRIVEAU INSURANCE AGENCY</u>
(Assumption of a Duty)

65.     Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

66.     State Farm warranted to provide a safe working environment, via State Farm's Code of Conduct, which provides the following:

> State Farm is committed to a work environment where everyone is treated with respect and dignity…[w]e will not tolerate sexual or any other form of harassment that interferes with work performance or creates a hostile or offensive work environment…[w]e expect all workplace relationships to be of a professional nature and free of harassment, unlawful bias and/or offensive conduct. Inappropriate comments and objectively offensive behavior will not be tolerated in any business interactions, regardless of the setting or parties involved.
> …
> We all have the responsibility to work in a way that helps ensure the safety and security of ***our coworkers***, business partners, vendors and visitors.

Exhibit A, State Farm's Code of Conduct (emphasis added).

67.     Corriveau has demonstrated conduct that meets conduct forbidden by State Farm.

68.     Both Corriveau, owner and controller of Corriveau Insurance Agency, and Uzzolino signed the State Farm Code of Conduct Completion Form, annually, and completed the annual Code of Conduct Training Course.

## FOR A SIXTH CAUSE OF ACTION – STATE FARM
## AND CORRIVEAU INSURANCE AGENCY
### (Constructive Discharge In Violation of Public Policy)

69.     Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

70.     Uzzolino was employed by Defendants until January 13, 2021 when she was constructively discharged.

71.     Because of the hostile, offensive work environment and/or Corriveau's inappropriate conduct, Uzzolino experienced a significant adverse change in her working conditions.

72.     Based on the foregoing, Defendants constructively discharged Uzzolino.

73.     The termination of employment by Defendants was a breach of Uzzolino's contract of employment and was wrongful termination.

74.     As a direct and proximate result, Uzzolino is entitled to an award of actual damages resulting from such termination.

## FOR A SEVENTH CAUSE OF ACTION – CORRIVEAU
### (Assault)

75.     Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

76.     Corriveau's conduct, as outlined above, was so egregious and outrageous that it caused Uzzolino to be in reasonable fear of bodily harm.

77.    As a direct and proximate result of Corriveau's assault, Uzzolino has suffered damages for which Corriveau is liable.

### FOR A EIGTH CAUSE OF ACTION – CORRIVEAU
(Battery)

78.    Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

79.    Without consent of Uzzolino, Corriveau willfully and maliciously put his hands on Uzzolino on Defendants' premises.

80.    Corriveau intended to cause harmful and sexually offensive contact directly with Uzzolino's body.  Said contact offended a reasonable sense of personal dignity.

81.    Corriveau intended to cause a harmful and offensive contact with Uzzolino by the use of Corriveau's hands.

82.    Corriveau's willful and malicious conduct as described herein was not done with the consent of Uzzolino.

83.    Uzzolino was harmed by Corriveau's unwanted contact and/or touching.

### FOR A NINTH CAUSE OF ACTION – CORRIVEAU
(Outrage)

84.    Uzzolino realleges and reincorporates all preceding paragraphs as if fully set forth herein.

85.    The facts set forth above demonstrate Corriveau inflicted severe emotional distress on Uzzolino through inappropriate comments and/or conduct, sexual harassment and/or assault and other related conduct.

86.    Corriveau's conduct toward Uzzolino was so extreme and outrageous as to exceed all bounds of decency and must be regarded as atrocious and utterly intolerable in civilized society.

87.    The distress Uzzolino has suffered and continues to suffer is so severe that no reasonable person could be expected to endure it.

88.    As a result of Corriveau's outrageous conduct, Uzzolino is entitled to recover damages.

WHEREFORE, Uzzolino prays for judgment against Defendants for actual damages, together with punitive damages in an appropriate amount, for the costs associated with this action, and for such other and further relief as the Court may deem just and proper.

PARKER LAW GROUP, LLP

BY: */s/Chelci S. Avant*
Ronnie L. Crosby, Fed ID: 6311
rcrosby@parkerlawgroupsc.com
Chelci S. Avant, Fed ID: 13177
cavant@parkerlawgroupsc.com
101 Mulberry Street East
Post Office Box 487
Hampton, South Carolina 29924
Phone: 803.903.1781

ATTORNEYS FOR PLAINTIFF

June 2, 2022
Hampton, South Carolina